Marvin LIVINGSTON et al., Plaintiffs-Appellees,

v.

Bernard GARMIRE, etc., et al., Defendants-Appellants.

No. 29463.

United States Court of Appeals, Fifth Circuit.

May 10, 1971.

Alan H. Rothstein, City Atty., S. R. Sterbenz, Asst. City. Atty., Miami, Fla., for defendants-appellants.

Michael Abbott, Ann Arbor, Mich., Donald C. Peters, Miami, Fla., for plaintiffs-appellees.

Before JOHN R. BROWN, Chief Judge, WISDOM and MORGAN, Circuit Judges.

## ON PETITION FOR REHEARING

WISDOM, Circuit Judge:

We originally decided this appeal on January 22, 1971, 437 F.2d 1050. On February 23, while a petition for rehearing filed in this case by the defendants-appellants was pending in this Court, the Supreme Court decided the cases of Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669; Samuels v. Mackell, 1971, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688; Boyle v. Landry, 1971, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696; Perez v. Ledesma, 1971, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701; Dyson v. Stein, 1971, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781; and Byrne v. Karalexis, 1971, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792. The relevance of those cases to our disposition of the petition for rehearing required that we direct the parties to file additional briefs. We now grant the petition for rehearing and withdraw our opinion of January 22. In its place we substitute the following opinion:

The defendants appeal from an order of the district court, 308 F.Supp. 472, declaring unconstitutional certain portions of the disorderly conduct ordinance of the City of Miami and enjoining their enforcement. We vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

The plaintiffs, three Negro residents of Miami, Florida, facing prosecution before the Municipal Court for disorderly conduct,[1] brought this class action un-

1. Marvin Livingston was charged with a "diversion tending to be a breach of the peace" and being "loud and abusive and would not quiet down after 3 warnings";

der Rule 23(b)(2), F.R.Civ.P., on their own behalf and "on behalf of all Negro citizens and other minority groups, and/or other persons similarly situated, who now or in the future face prosecution by the City of Miami for disorderly conduct" under subsections (a) and (f) of § 38–10 of the Miami City Code. The defendants in this action are Bernard Garmire, the Chief of Police of the City of Miami, and William Porter, the City Attorney. Federal jurisdiction is based on 28 U.S.C. § 1343(3).

The plaintiffs alleged that subsections (a) and (f) of § 38–10, the Miami disorderly conduct ordinance, were unconstitutional upon their face as contrary to the guarantees of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Subsections (a) and (f) of the ordinance read as follows:

Any person in the city shall be deemed guilty of disorderly conduct who:

(a) Shall make, aid, countenance or assist in making any improper noise, riot, disturbance, breach of the peace or a diversion tending to a breach of the peace.

   \*    \*    \*    \*    \*    \*

(f) Uses obscene or profane language in the presence of anyone else, or any indecent, insulting or abusive language to another, or makes any threats of violence against another person.

The plaintiffs alleged that those subsections had a "chilling effect upon" and abridged their freedom of speech, denied them their right of privacy, and were palpably vague and overbroad, thus depriving them of due process of law, while giving the defendants absolute and unbridled discretion to arrest at will any person they pleased and whenever it pleased them.

They further alleged that they and the class they represented were "in constant and continuing danger of interrogation, harassment, and arrest" by the defendants acting under those subsections and cited statistics to support their charges. They also alleged that the arrests under those subsections were being made "discriminatorily and intentionally" against them and their class.

Finally, they alleged that it would be impossible for them to raise their constitutional contentions within the state court system, e. g., as a defense to a state criminal prosecution, because the Florida appellate courts had consistently upheld the constitutionality of identical statutes and ordinances. "A journey through the state court system would thus be futile and without meaning for an effective remedy or substantial justice."

Concluding that they were thus suffering irreparable injury and lacked an adequate remedy in the state courts, the plaintiffs prayed that the federal district court assume jurisdiction of the case, enter a judgment declaring the ordinance unconstitutional, and enjoin its enforcement.

In reliance on *Dombrowski*[2] and *Zwickler*[3] the district court granted equitable relief, without regard to the ex-

Stanley Walker, with "using obscene and profane language," with "creating a disturbance," and with "making threats of violence against others \* \* \* to-wit: I will kill you"; Edward Powell, with "using obscene and profane language."

2. Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22. *See generally* Maraist, Federal Injunctive Relief Against State Court Proceedings: The Significance of Dombrowski, 48 Texas L.Rev. 535 (1970). On the applicability of § 2283 to superior federal rights, e. g., first amendment rights, see Reaves and Golden, The Federal Anti-Injunction Statute in the Aftermath of Atlantic Coast Line Railroad, 5 Ga.L. Rev. 294 (1971).

3. Zwickler v. Koota, 1967, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444. *See* Washington v. Garmire, S.D.Fla.1970, 317 F. Supp. 1384, in which Judge Atkins declined to give declaratory relief where there was a pending criminal prosecution, First Amendment rights were not involved, and no irreparable injury was threatened.

istence of bad faith or harassment, on the ground that certain provisions of the Miami ordinance on their face were vague or overly broad in violation of the First Amendment. The district court did not pass on the plaintiffs' allegations of harassment, discriminatory enforcement, and lack of an adequate remedy in the state courts. The court simply entered an order declaring subsection (a) of § 38–10 unconstitutional in its entirety. *See* Livingston v. Garmire, S.D.Fla.1970, 308 F.Supp. 472. In a separate unpublished opinion the court next declared unconstitutional that part of subsection (f) proscribing the use of "obscene," "profane," or "indecent, insulting or abusive" language in the presence of another. The court then enjoined the defendants from enforcing those portions of the ordinance that the court had declared unconstitutional.

In the recent series of six cases beginning with Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, the Supreme Court held that a federal district court may not enjoin a pending state criminal prosecution unless the plaintiff can prove the existence of irreparable injury that is both "great and immediate."[4] Moreover, the types of injury inherent in having to defend against a single criminal prosecution—e. g., monetary costs, anxiety, inconvenience—do not themselves constitute "irreparable" injury. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution. *Id.* at 46, 91 S.Ct. 746, 27 L.Ed.2d at 676–677. Similarly, the mere fact that a statute on its face may be unconstitutionally vague or overly broad does not justify federal intervention. To halt a pending state criminal prosecution, the plaintiff must show in addition "bad faith, harassment, or any other unusual circumstance that would call for equitable relief."[5] *Id.* at 50–54, 91 S.Ct. 746, 27 L.Ed.2d at 679–681. Finally, the existence of such irreparable injury is of course a matter to be determined carefully under the facts of each case.[6] Dyson v. Stein, 1971, 401

---

4. Justice Black stated in Younger v. Harris: "There may, of course, be extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment." *Id.* at 53, 91 S.Ct. at 746, 27 L.Ed.2d at 681.

5. In Samuels v. Mackell, 1971, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688, the Court addressed itself to the question whether declaratory relief might be proper even if an injunction were not warranted:

> We therefore hold that, in cases where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and that where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well.

401 U.S. at 73, 91 S.Ct. 764, at 768, 27 L.Ed.2d at 693–694.

6. Last term the Supreme Court stated that the federal Anti-Injunction Act, 28 U.S.

C. § 2283 is not simply a codification of the principle of comity to be applied or disregarded as the court sees fit, but rather is a "clear-cut prohibition qualified only by specifically defined exceptions." Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 1970, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234, 241.

The Court in *Younger* did not reach the question of the independent force of § 2283:

> Because our holding rests on the absence of the factors necessary under equitable principles to justify federal intervention, we have no occasion to consider whether 28 U.S.C. § 2283, which prohibits an injunction against state court proceedings "except as expressly authorized by an Act of Congress" would in and of itself be controlling in this case.

401 U.S. at 54, 91 S.Ct. 746, at 755, 27 L.Ed.2d at 681.

Indeed, in an enlightening concurring opinion, Justice Stewart, joined by Justice Harlan, emphasized what questions the Court did *not* decide in *Younger:*

> In basing its decisions on policy grounds, the Court does not reach any questions concerning the independent

U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781, 784.

Since the district court did not have the benefit of the *Younger* series of cases when it entered its judgment in this case, respect for law as the Supreme Court construes it requires that we remand the case for reconsideration in light of these cases. *See* Byrne v. Karalexis, 1971, 401 U.S. 216, 91 S.Ct. 777, 27 L. Ed.2d 792, 795; Dyson v. Stein, 1971, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781, 784. We therefore vacate the judgment of the district court and remand the case for further proceedings consistent with this opinion.

force of the federal anti-injunction statute, 28 U.S.C. § 2283. Thus we do not decide whether the word "injunction" in § 2283 should be interpreted to include a declaratory judgment, or whether an injunction to stay proceedings in a state court is "expressly authorized" by § 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983. * * * Finally, the Court today does not resolve the problems involved when a federal court is asked to give injunctive or declaratory relief from *future* state criminal prosecutions.

401 U.S. at 55, 91 S.Ct. 746, at 757, 27 L.Ed.2d at 681–682.

The answer sometimes given when § 2283 is raised as a bar to federal injunctive relief against state criminal proceedings is of course that 42 U.S.C. § 1983, the Reconstruction Civil Rights Act under which most such suits for injunctive relief are brought, is an "expressly authorized" exception to § 2283. *E. g.,* Honey v. Goodman, 6 Cir. 1970, 432 F.2d 333. In a dissenting opinion in *Younger*, Justice Douglas took that view. *See* 401 U.S. at 58, 91 S.Ct. 746, 27 L.Ed.2d at 683–687. Nevertheless, as Justice Stewart's concurring opinion, quoted above, makes clear, the majority of the Court did not reach the issue. We do not reach the issue in this case either.